

09/28/2007

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| BRIAN JON CRAIG and | § | Case No. 05-40722 |
| KIMBERLY A. CRAIG, | § | (Chapter 7) |
| | § | |
| Debtors. | § | |
| _____ | § | |
| | § | |
| M&I MARSHALL AND ILSLEY | § | |
| BANK, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Adv. No. 05-4100 |
| | § | |
| BRIAN JON CRAIG, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION REGARDING
## COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT

This matter came before the Court for the trial of the complaint filed by the Creditor-Plaintiff, M&I Marshall and Ilsley Bank (the "Plaintiff"). In its complaint, the Plaintiff sought a determination of whether an alleged debt owed to it by the Defendant-Debtor, Brian Jon Craig (the "Defendant") is excepted from discharge pursuant to 11 U.S.C. §523(a)6).[1] At the conclusion of the trial, the Court orally ruled in favor of the Defendant and took the matter under advisement in order to prepare a more detailed written ruling.

---

[1] The Plaintiff asserted claims under both §523(a)(2)(A) and (a)(6) of the Bankruptcy Code in its complaint and in the parties' Joint Pretrial Order. At trial, however, the Plaintiff's sole argument was that the Defendant's obligation to it should be excepted from discharge under §523(a)(6) based on the Defendant's alleged failure to allow the Plaintiff access to certain real property. In response to a question from the Court at trial, counsel for the Plaintiff confirmed that the Plaintiff had abandoned its §523(a)(2)(A) claim.

## I. JURISDICTION

A proceeding seeking a determination of the dischargeability of a debt raises a core matter over which this Court has jurisdiction to enter a final order. *See* 28 U.S.C. §§ 157(b)(2)(I) and 1334.

## II. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

In June 2003, the Defendant purchased a home located at 13977 Firelight Court in Apple Valley, Minnesota (the "Property") for $362,000. Homecomings Financial financed 80% of the purchase price, and the Plaintiff financed the remaining 20% of the purchase price. The Property was valued by an appraiser at $396,000 at or around the time the Defendant purchased the Property.

The Defendant borrowed an additional $100,000 from the Plaintiff in July 2003 in order to make improvements to the Property. The loan was secured by a second lien on the Property. Several months later, in November 2003, the Defendant and his wife refinanced both mortgages with the Plaintiff.

In particular, on November 19, 2003, the Defendant and his wife, Kimberly Craig, executed and delivered to the Plaintiff a promissory note in the original principal amount of $388,000 (the "First Lien Note") and a Mortgage granting the Plaintiff a security interest in and to the Property. Additionally, on November 25, 2003, the Defendant executed a Mortgage Note payable to the Plaintiff in the amount of $98,000 (the "Second Lien Note"). The value of the Property was appraised at $486,000 – which was equal to the total amount of the First and Second Lien Notes – at or around the time the parties executed the First and Second Lien Notes.

After making mortgage payments for more than a year, the Defendant learned that he would need to relocate for his job as a mortgage broker. He and his wife engaged a realtor to sell the Property in August 2004. They subsequently relocated to Tampa, Florida, obtained temporary housing, and ceased making payments on their loan obligations to the Plaintiff. The Defendant attempted, unsuccessfully, to negotiate a "short sale" of the Property with the Plaintiff and his employer and to arrange for his employer to make the mortgage payments pending the sale of the Property. In early December 2004, the Defendant and his wife allowed the insurance on the Property to lapse.

At or around the time the insurance lapsed, a water pipe burst in the interior of the house, flooding the second floor. After a neighbor noticed water running out of the second floor, the Plaintiff, working through the Defendant's realtor, turned off the water to the Property and examined the empty home for possible fire hazards. The Defendant subsequently allowed the Plaintiff access to the Property in order to obtain estimates of the cost to repair the water damage.

The Defendant's insurer, State Farm Fire and Casualty Company ("State Farm"), was unable to determine that the damage to the Property occurred after the lapse in insurance in December 2004. Accordingly, State Farm issued a check in the amount of $27,810.89 payable to the Plaintiff, the Defendant and the Defendant's wife in December 2004. The Defendant did not allow the Plaintiff access to the Property to make any repairs.

The Defendant and his wife filed a petition for relief under Chapter 7 of the Bankruptcy Code on February 11, 2005. They did not claim the Property as an exempt

asset, and they notified the Chapter 7 trustee that the Property was listed for sale. Over the next several months, the Plaintiff continued to make requests to the Defendant for access to the Property.

Finally, on May 13, 2005, the Plaintiff filed a motion for relief from the automatic stay imposed by §362(a) of the Bankruptcy Code with respect to the Property. No party in interest opposed the Plaintiff's motion, which was granted on June 2, 2005. The Plaintiff finally sold the Property on February 10, 2006, for $340,000. The Plaintiff's net recovery, after paying costs of $23,233.51, was $316,766.49.

In this adversary proceeding, the Plaintiff complains that, from December through and including the date it filed its complaint, the Defendant refused to allow it access to the Property to repair the water damage. The Plaintiff also complains that the Defendant executed the First and Second Lien Notes without any intention or ability to repay the Plaintiff. The Plaintiff seeks a judgment from this Court that it has incurred damages in the amount of $154,004.91 as a result of the Defendant's conduct and that these damages are not dischargeable in bankruptcy.

### III. DISCUSSION

A fresh start is not promised to all who file for bankruptcy relief, only to "the honest but unfortunate debtor." *Grogan,* 498 U.S. 279, 286-87 (1991). In furtherance of this policy, §523(a)(6) of the Bankruptcy Code provides that:

> (a) A discharge under Section 727 . . . of this title does not discharge an individual debtor from any debt . . . (6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

11 U.S.C. §523(a)(6). In an action to determine the dischargeability of a debt under §523, the creditor has the burden of proof under a preponderance of the evidence standard. *Grogan v. Garner*, 498 U.S. at 286.

Here, the Plaintiff asserts that the Defendant refused to give it access to the Property and, as a result, the Defendant was unable to enter the Property to make repairs until August 2005. The Plaintiff asserts that the actions of the Defendant in prohibiting it access to the Property to repair the water damage reduced the value of its secured interest in the Property and, thereby, caused $154,004.91 in damages to the Plaintiff. The Plaintiff's Complaint alleges that these damages should be excepted from discharge as a debt arising from a willful and malicious injury inflicted upon it by the Debtor-Defendant.

The Supreme Court has examined whether the scope of §523(a)(6) encompasses all intentional acts that cause injury, or only acts done with an actual intent to cause injury. *Kawaauhau v. Geiger*, 523 U.S. 57 (1998). In *Geiger*, the Supreme Court stated that "[t]he word 'willful' in (a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional *injury,* not merely a deliberate or intentional *act* that leads to injury." The Supreme Court concluded that to construe the statute more broadly -- *i.e.*, to find a debt nondischargeable if it arose from an intentional act that ultimately led to injury -- would wrongfully place within the excepted category a wide range of situations in which an act is intentional, but injury is unintended.[2]

The *Geiger* decision significantly narrows of the scope of debts which can be deemed nondischargeable under §523(a)(6). *See Berger v. Buck (In re Buck)* 220 B.R.

---

[2] One example specifically mentioned by the Supreme Court was a debt arising from a "knowing breach of contract." The Court observed that "a construction so broad would be incompatible with the "well-known" guide that exceptions to discharge should be confined to those plainly expressed. *Id*. at 977.

5

999, 1004 (B.A.P. 10th Cir. 1998). Following the Supreme Court's ruling in *Geiger*, the lower courts, including the Fifth Circuit, have attempted to isolate and to identify those deliberate or intentional actions involving an "actual intent to cause injury," as would be necessary to meet the definition of "willful" under *Geiger*, from other deliberate or intentional acts that lead to injury.

In *Matter of Miller*, 156 F.3d 598 (5th Cir. 1998), the Fifth Circuit determined that a "willful" injury is established under §523(a)(6) when there exists either: (1) an objective substantial certainty of harm arising from a deliberate or intentional action, or (2) there is a subjective motive to cause harm by a party taking a deliberate or intentional action. The Fifth Circuit further determined that the standard for determining the existence of a "willful" injury under *Geiger* had subsumed the Fifth Circuit's former standard for determining "malicious" conduct under §523(a)(6) -- *i.e.,* "without just cause or excuse" -- and had eliminated any need to conduct a separate analysis on that malice element. *Id*. at 604-06. Accordingly, the Fifth Circuit held in *Miller* that, in determining whether a debt is nondischargeable under §523(a)(6), "an injury is 'willful and malicious' where there is either an objective substantial certainty of harm or a subjective motive to cause harm." *Id*. at 606. *See also Matter of Caton*, 157 F.3d 1026, 1029 (5th Cir. 1998); *In re Keaty*, 397 F.3d 264, 271 (5th Cir. 2005).

"For a debt to fall within this exception to discharge the creditor has the burden of proving that it sustained an injury *as a result* of a willful and malicious act by the debtor. Thus, a debtor's actions must be determined to be the cause of the creditor's injury." *In re Smith,* 249 B.R. 748, 750 (Bankr. S.D. Ohio 2000) (emphasis in original).

6

Here, the Plaintiff must show that the Defendant acted with the requisite mens rea, that the Defendant's action caused an injury and that the Plaintiff incurred damages related to such injury. The Plaintiff has failed to establish that the debt owing by the Defendant to the Plaintiff should be excepted from discharge as arising from a willful and malicious injury. Although there was no dispute at trial that the flood in December 2004 damaged the Property, the Defendant's insurer has compensated the Plaintiff for those damages, and the evidence presented by the Plaintiff was insufficient to establish that the Defendant caused any injury to the Plaintiff by failing to allow the Plaintiff immediate access to the Property to make repairs. Further, the Plaintiff has failed to prove the extent and value of damages related to such purported injury.

Moreover, from and after the Petition Date, the Plaintiff's inability to obtain access to the Property was due in substantial part to its own actions or failure to act. The Chapter 7 trustee or this Court -- not the Defendant -- had the power to grant the Plaintiff access to the Property after the Petition Date. The Plaintiff nonetheless continued to direct its requests for access to the Property to the Defendant and delayed in requesting relief from the automatic stay with respect to the Property.

As the Supreme Court has noted, to prevail under §523(a)(6), a plaintiff must demonstrate the existence of a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury. There has been insufficient evidence submitted by the Plaintiff from which to deduce that the circumstances surrounding the Defendant's refusal to allow the Plaintiff to repair the Property during the weeks between the bursting of the water pipe and the Petition Date or the date on which foreclosure occurred caused any injury to the Plaintiff. Even if this Court were to assume that the Debtor's refusal to

allow the Plaintiff access to the property did cause some injury to the Plaintiff, the Plaintiff has failed to show by a preponderance of the evidence the amount of any damages caused thereby. Thus, under *Geiger* and *Miller,* the Plaintiff has failed to show by a preponderance of the evidence that its debt arose from a "willful and malicious injury" as contemplated by §523(a)(6).

### IV. CONCLUSION

Because the Court concludes that the Plaintiff has failed to prove its cause of action by a preponderance of the evidence, judgment must be rendered for the Defendant in this action. This Memorandum of Decision constitutes the Court's final findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, as incorporated into adversary proceedings in bankruptcy cases by Federal Rule of Bankruptcy Procedure 7052.[3] An appropriate judgment will be entered which is consistent with this Memorandum of Decision.

Signed on 9/28/2007

*Brenda T. Rhoades* MD
HONORABLE BRENDA T. RHOADES,
UNITED STATES BANKRUPTCY JUDGE

---

[3] To the extent that any finding of fact is construed to be a conclusion of law, it is hereby adopted as such. Likewise, to the extent any conclusion of law is construed to be a finding of fact, it is hereby adopted as such. The Court reserves the right to make additional findings and conclusions as necessary or as may be requested by any party.

8